IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STRYKER EUROPEAN OPERATIONS
HOLDINGS LLC and HOWMEDICA
OSTEONICS CORP.,

          Plaintiffs,

v.

TREACE MEDICAL CONCEPTS, INC.,

          Defendant.

Civil Action No. 25-637-GBW

---

Kelly E. Farnan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Stephanie P. Koh, Rachel B. Zingg, SIDLEY AUSTIN LLP, Chicago, IL; Phillip M. Aurentz, Morgan R. Medicino, SIDLEY AUSTIN LLP, Dallas, TX.

    *Counsel for Plaintiffs*

Rodger D. Smith II, Michael J. Flynn, MORRIS NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Joshua V. Van Hoven, McCAULLEY LAW GROUP LLC, San Ramon, CA; Richard T. McCaulley, McCAULLEY LAW GROUP LLC, Chicago, IL.

    *Counsel for Defendant*

**MEMORANDUM OPINION**

January 29, 2026
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is the Motion of Treace Medical Concepts, Inc. ("Defendant") to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 12) ("Defendant's Motion"). Defendant's Motion has been fully briefed (D.I. 13; D.I. 17; D.I. 20). For the reasons set forth below, Defendant's Motion (D.I. 12) is DENIED.

I. **BACKGROUND**

On May 22, 2025, plaintiffs Stryker European Operations Holdings LLC and Howmedica Osteonics Corp. ("Plaintiffs") filed the present action, alleging that Defendant infringes at least one claim of each of U.S. Patent Nos. 8,414,583 ("the '583 Patent"), 9,168,074 ("the '074 Patent"), 10,383,671 ("the '671 Patent"), and 12,059,186 ("the '186 Patent") (collectively, "the Asserted Patents"). (D.I. 1). On August 4, 2025, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint "fails to state a plausible claim of infringement of any of the" Asserted Patents. (D.I. 13 at 1). Briefing was completed on September 9, 2025. (D.I. 13; D.I. 17; D.I. 20).

A. **The '583 Patent**

The '583 Patent generally "relates to an intramedullary implant for use between two bones or two bone fragments." ('583 Patent at Abstract). There are 18 claims in the '583 Patent. (*Id.* at Claims). The Complaint alleges that Defendant "has infringed and continues to infringe one or more claims of the '583 Patent," including claim 1. (D.I. 1 ¶ 36). Claim 1 recites:

> 1. An intramedullary implant for use between two bones or bone fragments, the implant comprising:
> a one-piece body having an elongated shape, the body having opposing first and second ends, each of the ends having a

> longitudinal axis therethrough and an anchor zone for anchoring to a respective bone part,
> wherein the anchor zone of the first end is threaded and has a generally cylindrical shape and the anchor zone of the second end has a flat cross-section in a direction perpendicular to the longitudinal axis thereof, and
> wherein the anchor zone of the second end has a plurality of outwardly projecting teeth forming a portion of the flat cross-section thereof, at least a first tooth of the plurality of teeth being spaced from a second tooth of the plurality of teeth in a direction along the longitudinal axis of the second end, and at least the first tooth facing in a direction opposite a third tooth of the plurality of teeth and the second tooth facing in a direction opposite a fourth tooth of the plurality of teeth.

('583 Patent at Claim 1).

### B. The '074 Patent

The '074 Patent also "relates to an intramedullary implant for use between two bones or two bone fragments." ('074 Patent at Abstract). The Complaint asserts that Defendant "has infringed and continues to infringe one or more claims of the '074 Patent," including claim 1. (D.I. 1 ¶ 49). Claim 1 recites:

> 1. An intramedullary implant for use between first and second bone parts, the implant comprising:
> a first threaded end for anchoring to the first bone part;
> a second end extending from the first end for anchoring to the second bone part, the second end having a longitudinal axis, a body portion, and a plurality of teeth projecting from the body portion, wherein at least a first tooth of the plurality of teeth is spaced from a second tooth of the plurality of teeth in a direction along the longitudinal axis of the second end, the first and second teeth extending from the body portion in a same direction, and at least the first tooth extending from the body portion in a different direction than a direction a third tooth of the plurality of teeth extends from the body portion.

('074 Patent at Claim 1).

### C. The '671 Patent

The '671 Patent "relates to a resorptive intramedullary implant between two bones or two bone fragments." ('671 Patent at Abstract). The Complaint asserts that Defendant "has infringed and continues to infringe one or more claims of the '671 Patent," including claim 9. (D.I. 1 ¶ 62). Claim 9 is an independent claim and recites:

> 9. A method for performing arthrodesis or osteosynthesis of first and second bone parts, the method comprising the steps of:
> tapping a first bone part to form a thread in the first bone part;
> receiving a first threaded end of an implant into the first bone part, the implant including a second end extending from the first end, the second end having a longitudinal axis, a body portion, and a plurality of teeth projecting from the body portion,
> wherein at least a first tooth of the plurality of teeth is spaced from a second tooth of the plurality of teeth in a direction along the longitudinal axis of the second end, the first and second teeth extending from the body portion in a same direction, and at least the first tooth extending from the body portion in a different direction than a third tooth of the plurality of teeth, and
> wherein the second end has an opening defining at least two spreadable arms; and
> receiving the second end into the second bone part such that the arms spread into engagement with the second part by elasticity.

('671 Patent at Claim 9).

### D. The '186 Patent

The '186 Patent "relates to a resorptive intramedullary implant between two bones or two bone fragments." ('186 Patent at Abstract). The Complaint asserts that Defendant "has infringed and continues to infringe one or more claims of the '186 Patent," including claim 10. (D.I. 1 ¶ 82). Claim 10 is an independent claim and recites:

> 10. An intramedullary implant for insertion into first and second bone parts, the implant being a one-piece body, the one-piece body comprising:
> a threaded first end for anchoring to the first bone part; and
> a second end extending from the first end for anchoring to the second bone part, the second end comprising:

4

>   a body portion defining an opening in a median portion thereof;
>   a first plurality of projections extending from a first side of the body portion and extending away from the opening, each one of the first plurality of projections including a respective one of a first set of flat surface portions, the first set of flat surface portions being coplanar; and
>   a second plurality of projections extending from a second side of the body portion opposite the first side and extending away from the opening, each one of the second plurality of projections including a respective one of a second set of flat surface portions, the second set of flat surface portions being coplanar.

('186 Patent at Claim 10) (together, with Claim 1 of the '583 Patent, Claim 1 of the '074 Patent, and Claim 9 of the '671 Patent, the "Asserted Claims").

## II. <u>LEGAL STANDARDS</u>

### A. <u>Rule 12(b)(6) Motion to Dismiss</u>

Federal Rule of Civil Procedure 8(a) requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Staton Techiya, LLC v. Harman Int'l Indus.*, 734 F. Supp. 3d 354, 363 (D. Del. 2024) (citing Fed. R. Civ. P. 12(b)(6)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "In other words, a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Bot M8*

*LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (citing *Iqbal*, 556 U.S. at 678). The Court assumes the factual allegations contained in the complaint to be true and draws all reasonable inferences in favor of the non-moving party when considering a motion to dismiss. *See Twombly*, 550 U.S. at 555-56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Non-Infringement

"The Patent Act . . . provides that '[n]oninfringement . . .' may be raised 'in any action involving the validity or infringement of a patent.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n.15 (2014) (dictum) (alteration in original) (quoting 35 U.S.C. § 282(b)). "A determination of non-infringement, either literal or under the doctrine of equivalents, is a question of fact." *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1336 (Fed. Cir. 2008) (citing *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000)).

The *Iqbal/Twombly* standards govern the pleading standard for allegations of patent infringement. *Golden v. Apple Inc.*, 819 F. App'x 930, 930-31 (Fed. Cir. 2020). "Accordingly, a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8*, 4 F.4th at 1353. Instead, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.*

"More particularly: '[a] plaintiff is not required to plead infringement on an element-by-element basis.'" *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) (alteration in original) (quoting *Bot M8*, 4 F.4th at 1352). "Instead, it is enough that a complaint place the alleged infringer on notice of what activity . . . is being accused of infringement." *Id.* (omission in original) (quoting *Bot M8*, 4 F.4th at 1352). "[W]hile a patentee's pleading obligations are not

insurmountable, a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *Id.* (alteration in original) (quoting *Bot M8*, 4 F.4th at 1346).

### III. DISCUSSION

Defendant moves to dismiss the Complaint because, according to Defendant, (1) the proper construction of all Asserted Claims requires that the claimed invention be made using a resorptive material, and (2) because the '583 Patent requires "a flat cross-section in a direction perpendicular to the longitudinal axis thereof," and the Complaint fails to show this "geometric relationship in the accused products." (D.I. 13 at 1). The Court will address each argument in turn.

#### A. The Court Declines to Hold, at this Stage, that the Claims Require the Implant to be Made of a Resorptive Material

All of the Asserted Claims "require an 'intramedullary implant' or an 'implant.'" (D.I. 13 at 11 (citing D.I. 1 ¶¶ 37, 49, 62, 82; '583 Patent at Claim 1; '074 Patent at Claim 1; '671 Patent at Claim 9; '186 Patent at Claim 10)). According to Defendant, "the shared specification of the Patents-in-Suit disclaims an implant made of a non-resorptive material, because all of the specification's embodiments are limited to resorptive material[s], the specification repeatedly refers to a resorptive implant as 'the invention,' and the specification disparages prior art implants for being nonresorptive." (D.I. 13 at 11). Defendant further contends that this dispute is amendable to decide on a motion to dismiss, because, in Defendant's view, the Court need not look past the Asserted Patents' intrinsic evidence to construe the Asserted Claims as requiring that the claimed implant (or intramedullary implant) be made using a resorptive material. (*Id.* at 10).

Plaintiffs disagree. (*See generally* D.I. 17 (opposing Defendant's Motion)). First, Plaintiffs assert that claim construction at this stage is premature, and likewise that the Court should not entertain *Markman*-type arguments on a motion to dismiss. (D.I. 17 at 7-10). Second,

Plaintiffs contend that, even if the Court were to construe the Asserted Claims at this stage, the Court should construe said claims to not require that the claimed "intramedullary implant" or "implant" be made of a resorptive material. (*Id.* at 10-15). According to Plaintiffs, such an interpretation would be improper because (1) such a limitation is not present in any of the Asserted Claims, (2) the specifications of the Asserted Patents' discussion of resorptive materials does not rise to the level required for specification disclaimer, and (3) because a limitation requiring the implant to be made of a resorptive material is present in certain dependent claims, interpreting "implant" as Defendant requests would run afoul of the doctrine of claim differentiation. (*Id.* at 12-15).

"Claim terms are generally given their plain and ordinary meaning." *Magēmā Tech. LLC v. Phillips 66*, 153 F.4th 1248, 1260 (Fed. Cir. 2025) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc)). However, in some circumstances, "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance . . . the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." *Phillips*, 415 F.3d at 1316 (citing *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001)). "Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed*, 242 F.3d at 1341. However, "[m]ere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to" meet the "exacting" standard for specification disclaimer. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

Ultimately, given the exacting standard for specification disclaimer, at this stage of the case, the Court is unable to conclude that Plaintiffs have clearly and unmistakably disclaimed implants made from non-resorptive materials from the scope of the Asserted Claims. Defendant is generally correct in asserting that, under some circumstances, a district court may construe claim terms in deciding a motion to dismiss, if only intrinsic evidence is needed to construe the claim term(s) at issue. *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993 (Fed. Cir. 2024); *see also id.* at 994 ("[S]ometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed."). However, as discussed below, the intrinsic evidence presented by Defendant is not sufficient to enable this Court to construe the claims in Defendant's favor at the current stage of this action.

Defendant points out that the specification of the Asserted Patents, at times, describes the "invention" as an implant made of a resorptive material. (D.I. 13 at 12-13 (citing '671 Patent at 1:57-63; '186 Patent at 1:59-65; '583 Patent at 2:37-40; '583 Patent at 3:26-32)). However, such descriptions are not necessarily dispositive. Although "descriptions of the 'present invention' as a whole could limit the scope of the invention, use of the phrase 'present invention' or 'this invention' is not always so limiting, such as where the references are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent." *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) (cleaned up).

Defendant also identifies instances where, in the specifications of the Asserted Patents, the invention is implied to be made from a resorptive material. (D.I. 13 at 12 (citing '583 Patent at 1:64-67; 2:44-47; & 3:26-32)). However, as Plaintiffs observe, the excerpts identified by Defendant *could* be read in a way that does not limit the invention, in that the excerpts arguably explain merely how the claimed design functions are adapted to allow for the implant to be made

from a resorptive material. (*See* D.I. 17 at 12; *see also* '583 Patent at 1:64-67 ("Considering the specific mechanical characteristics of resorptive materials, and to solve the given problem of improving anchor and stability, the cylindrical cross-section is threaded and tapers in the direction of its free end."); *id.* at 2:44-47 ("Taking into account the specific characteristics of the resorptive material and to attain the given object of anchor and stability, the zone **A1** is of a cylindrical shape section whereas the other zone **A2** is flat."); *id.* at 3:26-32 ("The advantages are readily apparent from the description; in particular, it is to be emphasized and understood that the combination of the two anchor zones **A1** and **A2** of cylindrical and a flat shape, respectively, significantly enhances anchor and stability of the implant adapted to the geometry of the bone site and to the material properties, namely, a resorptive material.")).

Defendant also identifies several instances in the specifications of the Asserted Patents that explain the disadvantages of using an implant not made of a resorptive material (or, conversely, the advantages of using an implant made of a resorptive material). (D.I. 13 at 13-14 (citing '583 Patent at 1:45-46; 1:52-58)). The Federal Circuit has explained that "repeated derogatory statements concerning one type of material are the equivalent of disavowal of that subject matter from the scope of the patent's claims." *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1320 (Fed. Cir. 2006). However, the Federal Circuit has also cautioned that "[m]ere criticism of a particular embodiment encompassed in the plain meaning of a claim term is not sufficient to rise to the level of clear disavowal." *Thorner*, 669 F.3d at 1366 (citing *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)).

In discussing the weaknesses of Defendant's arguments for its proposed construction of "implant" and "intramedullary implant," the Court does not suggest that said arguments are devoid of merit. In fact, Defendant *may* prevail on its disavowal arguments at claim construction.

However, the Court cannot conclude, at the current stage of this action, that Defendant has shown that Plaintiffs could not prevail at claim construction, or that the Court would not benefit from additional claim construction proceedings. *See Olink Proteomics AB v. Alamar Biosciences, Inc.*, C.A. No. 23-1303-MN, 2025 WL 275604, at *9 (D. Del. Jan. 23, 2025) ("In the end, *it is just not crystal clear* to the Court that Olink's allegations of infringement are implausible due to disavowal. Alamar might ultimately prevail in this case on such a rationale. But the Court cannot recommend granting it this victory at the pleading stage, based on the current record." (emphasis added)), *report and recommendation adopted*, C.A. No. 23-1303 (MN), 2025 WL 459697 (D. Del. Feb. 11, 2025).

The "[C]ourt has considerable latitude in determining when to resolve issues of claim construction." *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). Based on the above, the Court concludes the proper course of action is to "adopt the construction advanced by the non-moving party and assess the motion by applying that construction." *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1222 (Fed. Cir. 2025); *see also id.* ("Sometimes a claim's meaning may be so clear on the only point that is ultimately material to deciding the dismissal motion that no additional process is needed. This is not such a case. Both parties point to various portions of the specification that arguably support their preferred interpretations." (cleaned up)). In the instant case, the Asserted Claims' meaning is not sufficiently clear as to allow the Court to forgo additional process. The Court will, therefore, adopt Plaintiffs' proposed construction of the terms "implant" and "intramedullary implant" for the limited purpose of resolving this motion, and hold that the terms "implant" and "intramedullary implant" do not require that the implant be made of a resorptive material. (*See* D.I. 17 at 10). Defendant's Motion (D.I. 12) is therefore denied on this ground.

B.  **Plaintiffs Have Adequately Pled Infringement of Claim 1 of the '583 Patent**

Defendant next moves this Court to dismiss Count I of Plaintiffs' Complaint because, in Defendant's view, Plaintiffs have not adequately pled infringement as to all elements of Claim 1 of the '583 Patent (the only specifically asserted claim in the '583 Patent). (D.I. 13 at 16-19). Specifically, Defendant claims that Plaintiffs have not pled that Defendant's product infringes the: "wherein the anchor zone of the first end is threaded and has a generally cylindrical shape and the anchor zone of the second end has a flat cross-section in a direction perpendicular to the longitudinal axis thereof" limitation with sufficient clarity to put Defendant on notice as to how Plaintiffs believe that Defendant's product infringes, as Plaintiffs do not sufficiently identify a "flat cross section in a direction perpendicular to the longitudinal axis thereof," as required by the above limitation. (*Id.* at 18). In support of its contention, Defendant relies on two images from Plaintiffs' Complaint that are reproduced below:



(D.I. 1, Ex. 5 at 9). According to Defendant, merely showing perpendicular lines overlayed on an image of its product, next to two sets of perpendicular planes, does not adequately explain "how

the plane corresponding to the purported flat cross section is positioned on the accused product." (D.I. 13 at 17).

Plaintiffs, in response, assert that they have adequately pled infringement of the claim element at issue. Specifically, Plaintiffs allege that they have identified what portions of the accused product they consider to be the "flat cross section" and "longitudinal axis" recited in Claim 1 of the '583 Patent, and that they have alleged that the two features are perpendicular, as required by said claim. (D.I. 17 at 17). In Plaintiffs' view, nothing more is required at the pleading stage. (*Id.*).

The Court agrees with Plaintiffs. The first image reproduced above depicts the accused product, overlayed with intersecting blue and red lines, and a green circle around a segment of the accused product. (D.I. 1, Ex. 5 at 9). The Complaint explains Plaintiffs' annotations, stating that the green circle surrounds the barbed section of the accused product, the blue line defines the longitudinal axis of the accused product, and the red line represents "a plane through the flat-cross section of the barbed section." (D.I. 1, Ex. 5 at 8). Taken together, the images, annotations, and explanations sufficiently allege that the flat cross-section of the barbed segment of the accused product (oriented in the direction of the red line) perpendicularly intersects the longitudinal axis of the accused product (in the direction of the blue line). (*Id.* at 8-9).

Defendant, in its briefing, claims that Plaintiffs "do[] not explain how the red plane 'n' to the right . . . is oriented on the red line to the left and relative to the blue line to the left, in a manner that could satisfy the claim language," even stating that Occam's razor[1] suggests that this failure is because Plaintiffs are unable to do so while plausibly pleading their claim of infringement. (D.I.

---

[1] Occam's razor suggests that the simplest explanation for an event is probably the correct one.

13 at 18). To put another way, Defendant is claiming that Plaintiffs did not properly define a plane, or explain how any such plane would be oriented onto the red line in the above figure, much less show a perpendicular relationship between a properly defined plane and the longitudinal axis of the accused product, as required by the claim language. (*Id.* at 5-8, 18). However, such detailed allegations are not required at the pleading stage.[2] *Disc Disease Sols. Inc. v. VGH Sols.*, Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) ("The complaint specifically identified the three accused products – by name and by attaching photos of the product packaging as exhibits – and alleged that the accused products meet 'each and every element of at least one claim of the '113 [or '509] Patent, either literally or equivalently.' These disclosures and allegations are enough to provide VGH Solutions fair notice of infringement of the asserted patents." (cleaned up)); *Bot M8*, 4 F.4th at 1352 ("A plaintiff is not required to plead infringement on an element-by-element basis."). Defendant's cited cases are inapposite. For example, Defendant cites *Olink Proteomics AB v. Alamar Biosciences, Inc.*, C.A. No. 23-1303-MN, 2025 WL 275604 (D. Del. Jan. 23, 2025), *report and recommendation adopted*, C.A. No. 23-1303 (MN), 2025 WL 459697 (D. Del. Feb. 11, 2025), for the proposition "that 'the level of detail required in a case depends upon, *inter alia*, the complexity of the technology and the materiality of an element to practicing the asserted claim.'" (D.I. 20 at 10 (citing *Olink*, 2025 WL 275604, at *10)). Although a correct statement of the law, (*Bot M8*, 4 F.4th at 1353), *Olink* is not sufficiently analogous to the present case for at least two

---

[2] The Court is aware that a plane is unable to be defined by a single line. Mark Ryan, *Geometry for Dummies* 325 (3d ed. 2016) [https://perma.cc/7E5L-B32P]. However, even if more detailed allegations were required, Defendant has not explained why it would be unreasonable for this Court to infer that the red line in the figure reproduced above *represents* a plane that is angled perpendicularly to the blue line in the same figure. Therefore, even under the heightened pleading standard for which Defendant appears to advocate, Defendant's argument is unavailing.

key reasons. First, the technology in *Olink* was admittedly complicated. *Olink*, 2025 WL 275604, at *10 ("Olink acknowledges that the technology at issue here is not 'simple.'" (cleaned up)). Plaintiffs here make no such admission as to the technical complexity of their invention. (*See generally* D.I. 17 (making no such admission)). Second, the Court in *Olink* noted how the plaintiff did not even attempt to identify with specificity where in the Complaint it had alleged a sufficient factual basis for finding that the accused product practiced each element of the asserted claim. *Olink*, 2025 WL 275604, at *9 ("And although Olink generally avers that it has alleged that use of NULISA practices each and every step of claim 1, it never specifically identifies where the Complaint gave any indication of how NULISA is a 'method of detecting functional interactions between at least two molecules of interest,'" (cleaned up)). In contrast, Plaintiffs in this action have pointed to an annotated figure of the accused product, with accompanying descriptions, that explain its theory of infringement as to the element at issue. In sum, since *Olink* concerned more complicated technology and the allegations therein lacked the level of detail present in this action, the decision is not analogous to the present case and, thus, does not compel dismissal of Count I of the Complaint.

Similarly, other cases cited by Defendant concern pleadings where certain claim elements were pled with far less specificity than the instant case. *See De La Vega v. Microsoft Corp.*, No. W-19-CV-00612-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020) ("Because Plaintiff does not include *even a short written description* of how the accused instrumentalities meet the 'coupling' limitation, his complaint fails to state a claim upon which relief can be granted."); *Crystal Lagoons US Corp v. Cloward H20*, Case No. 2:19-CV-00796-BSJ, 2020 WL 8473230, at *1 (D. Utah May 11, 2020) ("The complaint recites the elements of the patent and includes photographs of the accused structure, but the photographs do not lead the Court to draw the

inference that the walls are covered in a plastic liner." (footnote omitted)); *Midwest Athletics & Sports All. LLC v. Xerox Corp.*, 8:17CV478, 2018 WL 1400426, at *4 (D. Neb. Mar. 20, 2018) ("MASA's Complaint identifies the patents-in-suit and generally identifies the products or product lines MASA believes might infringe its patents in some way but does not provide sufficient factual development to make a plausible showing of infringement or give Xerox meaningful notice of the grounds for MASA's infringement claims."); *Anza Tech., Inc. v. ARRIS Grp., Inc.*, Case No. 3:16-cv-01261-BEN-AGS, 2016 WL 8732646, at *4 (S.D. Cal. Nov. 4, 2016) ("Plaintiff relies on certain unidentified manufacturing standards to support its allegations of infringement, but it alleges that the patented methods are merely 'reflected in' those standards and the Accused Products are manufactured and assembled 'in compliance with one or more of these ESD standards.' ... The Amended Complaint does not assert that the standards require use of the patented methods. Nor does the Amended Complaint state that compliance with the standards necessarily results in infringement."); *see also* First Amended Complaint ¶ 56, *Crystal Lagoons* (Case No. 2:19-cv-00796) (D. Utah Jan 15, 2020), ECF No. 11 (reciting relevant claim element and providing photograph with no annotations or explanation as to how said claim element is met in the photograph); Complaint for Patent Infringement, *Midwest Athletics*, 8:17-CV-478 (D. Neb. Dec. 13, 2017), ECF No. 1 (operative complaint merely listing accused products and reciting claim elements, with no discussion as to how the accused products practice the asserted claims).

Defendant cites to a single case, *Uniloc 2017 LLC v. Zenpayroll, Inc.*, C.A. No. 19-1075-CFC-SRF, 2020 WL 4260616 (D. Del. July 23, 2020), *report and recommendation adopted sub nom. Uniloc 2017 LLC v. Zen Payroll, Inc.*, C.A. No. 19-1075-CFC-SRF, 2020 WL 5077416 (D. Del. Aug. 27, 2020), where a motion to dismiss was granted despite the plaintiff including claim charts similar to the type provided in this case. (D.I. 13 at 18 (citing *Uniloc*, 2020 WL 4260616,

16

at *3)). However, the court in *Uniloc* was applying an element-by-element pleading standard, used previously by courts in this district and subsequently rejected by the Federal Circuit. *Contrast Uniloc*, 2020 WL 4260616, at *3 ("[C]ourts in this district . . . require plaintiffs making direct infringement claims to plead facts 'that plausibly indicate that the accused products contain each of the limitations found in the claim.'" (citations omitted)), *with Bot M8*, 4 F.4th at 1352 ("To the extent this district court and others have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*."). Furthermore, the claim chart at issue in *Unlioc* merely contained a listing of each claim element and a description of the accused product; it did not explain (as Plaintiffs do here) *how* the claim element is met by the accused product. Amended Complaint For Patent Infringement, Exs. C & D, *Uniloc 2017 LLC v. ZenPayroll, Inc.*, (D. Del. Aug. 20, 2019), ECF No. 14; *see also Uniloc*, 2020 WL 4260616, at *5 ("Uniloc did not provide examples or otherwise explain how Gusto's platform meets the elements of the asserted claim."). *Uniloc*, therefore, is neither persuasive nor illustrative.

Thus, the Court concludes that Plaintiffs' Complaint contains sufficient factual allegations to place Defendant "on notice of what activity . . . is being accused of infringement." *See K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013). Defendant's Motion is therefore denied on this ground.

### C. Plaintiffs Have Adequately Pled Indirect Infringement and Infringement Under the Doctrine of Equivalents

Defendant also moves to dismiss Plaintiffs' indirect infringement claims and Plaintiff's allegations of infringement under the doctrine of equivalents. (D.I. 13 at 19). Defendant's arguments in support of dismissal of both theories presuppose that Plaintiffs have not adequately

pled literal infringement. (*Id.*). As discussed above, the Court holds that Plaintiffs *have* adequately pled literal infringement. Therefore, Defendant's Motion is denied on this ground.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion (D.I. 12) is DENIED. An appropriate Order will follow.